UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MATTHEW LEDVINA,<br><br>Defendant | Criminal No. 18cr10445<br><br>Violations:<br><br>Count One: Conspiracy to Commit Securities Fraud<br>(18 U.S.C. § 371)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

### Key Individuals and Entities

1. Defendant MATTHEW LEDVINA ("LEDVINA"), an attorney, was a resident of Zurich, Switzerland.

2. Morrie Tobin was a resident of Los Angeles, California who invested in publicly traded companies and engaged in pump-and-dump schemes.

3. Milan Patel, an attorney, was a resident of New Jersey and Florida, and of Zurich, Switzerland.

4. Roger Knox was a resident of France who, together with a co-conspirator, operated Silverton SA, also known as Wintercap SA ("Silverton"), a purported asset management firm based in Switzerland.

5. Brokerage B was an asset management firm based in Belize.

6. Environmental Packaging Technology, Inc. ("EPTI") was a privately held Nevada corporation that, as set forth below, began trading on the over-the-counter ("OTC") securities market in or about June 2017 under the ticker symbol EPTI.

7. The Securities and Exchange Commission ("SEC") is an independent agency of the executive branch of the United States government. The SEC is responsible for enforcing the federal securities laws and promulgating rules and regulations thereunder. Among other things, federal securities laws are designed to protect the investing public by maintaining fair and honest securities markets and eliminating manipulative and deceptive trading practices. The rules and regulations promulgated by the SEC include provisions that require individuals to file public reports after acquiring direct or indirect ownership of more than five percent of a class of a company's registered shares, and that further require individuals who directly or indirectly control more than ten percent of a class of a company's registered shares to file public reports after selling some or all of those shares.

### Key Terms and General Background on "Pump-and-Dump" Schemes

8. "Penny" or "microcap" stocks are securities issued by small, publicly traded companies that trade at less than $5 a share—and often less than $1 a share—and that are not listed on organized securities exchanges such as the New York Stock Exchange or the NASDAQ Stock Market, but rather are traded on the OTC market. Microcap stocks are particularly susceptible to manipulative trading and other forms of fraud because, among other things, they

are often thinly traded and their free-trading shares may be controlled by a single individual or group of individuals.

9. A reverse merger is a transaction in which a privately-held company acquires a publicly-traded company, and thereby itself becomes publicly traded without going through an initial public stock offering. Often, the publicly traded entities involved in reverse mergers are "shell" companies with few, if any, assets or operations.

10. A "pump-and-dump" scheme typically involves the manipulation of the stock price and/or trading volume of a publicly traded company (the "pump") so that individuals who control a substantial portion of the company's free-trading stock—often through third-party or "nominee" shareholders—can sell their shares to other investors (the "dump"), usually at artificially high prices.

11. Generally, pump-and-dump schemes effect the artificial inflation of stock prices and trading volume by, among other things, issuing news releases and promotional materials—often containing false, misleading, or exaggerated claims about a company's potential, or predicting unrealistic stock price targets—and by engaging in manipulative trading of the stock to generate the appearance of demand for the shares. Such schemes often rely on paid promotional campaigns to disseminate false and misleading information through emails, newsletters, hard mailers and social media outlets.

## The Conspiracy

12. As set forth below, from in or about 2013 through 2018, LEDVINA, Tobin, Patel, Knox and others known and unknown to the United States Attorney, conspired to commit securities fraud by disguising the conspirators' ownership and control of various microcap securities, and employing paid promotional campaigns and manipulative trading techniques to

artificially inflate the price and trading volume of those stocks—including, but not limited to, the stock of EPTI—so that Tobin and others could secretly sell their shares of those stocks at a substantial profit.

### Object and Purposes of the Conspiracy

13. The object of the conspiracy was for Tobin, Patel, LEDVINA, Knox and their co-conspirators to commit securities fraud by pumping and dumping the shares of publicly traded companies. The principal purpose of the conspiracy was for the defendants and their co-conspirators to make money.

14. Another purpose of the conspiracy was for Tobin, Patel, LEDVINA, Knox and their co-conspirators to conceal their actions from regulators, law enforcement and other investors.

### Manner and Means of the Conspiracy

15. Among the manner and means by which Tobin, Patel, LEDVINA, Knox and their co-conspirators carried out the conspiracy were the following:

   a. Taking private companies public through reverse mergers into publicly traded shell companies;

   b. Concealing their control of the publicly traded companies by using nominee entities, individuals and accounts to hold their shares;

   c. Engaging in manipulative trading techniques, and paying promoters to tout the stock of the publicly traded companies through the dissemination of false and misleading press releases and other materials, in order to increase investor interest in the companies and thereby artificially bolster their share price and trading volume; and

    d. Selling their shares (through the nominee entities) during the promotional campaigns.

### Overt Acts in Furtherance of the Conspiracy

16. On or about various dates between 2013 and 2018, Tobin, together with Patel, LEDVINA, Knox and their co-conspirators, committed or caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

17. In or about August 2013, Tobin, together with other conspirators, acquired the majority of the shares of GS Valet, a public shell company with minimal assets and operations, the shares of which traded on the OTC market under the ticker symbol GSVA. Shortly thereafter, Tobin and other conspirators caused the shell company to be renamed International Metals Streaming Corporation, and its ticker symbol to be changed to IMST.

18. Beginning in or about May 2015, and continuing through 2017, Tobin and Patel began to distribute the shares of IMST held by Tobin and other conspirators among four separate offshore entities registered in the names of various third parties (collectively, the "Offshore Nominees"), including that of LEDVINA. The Offshore Nominees were created to hold the IMST shares.

19. In or about and between December 2016 and June 2017, Tobin, together with other conspirators, merged EPTI into the IMST public shell. This reverse merger closed on or about June 9, 2017.

20. On or about February 1, 2017, Tobin and Patel caused the shell company to change its ticker symbol from IMST to EPTI.

21. In or about and between April and May 2017, Tobin, Patel, and others caused approximately 10.5 million shares of EPTI held by the Offshore Nominees, including nominees controlled by LEDVINA, to be transferred to Knox's Silverton asset management firm and Brokerage B.

22. In or about and between April and May 2017—before the reverse merger of the privately held company (EPTI) into the publicly traded shell (IMST) was complete—Tobin and other conspirators raised approximately $2.9 million in a private placement of shares of EPTI.

23. In or about and between May 20 and May 25, 2017, Tobin, Patel and others transferred approximately $1 million of the funds raised during the private placement to yet another offshore entity, Svarna Ltd., and from Svarna to a third-party stock promoter they hired to artificially promote the shares of EPTI.

24. On or about June 12, 2017, after the reverse merger was complete, the promoter began touting the shares of EPTI, prompting a significant increase in the stock's price and average daily trading volume.

25. In or about and between June 9, 2017 and June 27, 2017—when the SEC halted trading in EPTI shares—Silverton and Brokerage B, acting at the direction of Tobin, Patel and others, sold shares of EPTI held by the Offshore Nominees, generating proceeds of approximately $1,519,182.

## COUNT ONE
### Conspiracy to Commit Securities Fraud
### (18 U.S.C. § 371)

26.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 25 of this Information as if fully set forth herein, and charges that:

27.     From in or about 2013 through in or about 2018, in the District of Massachusetts and elsewhere, the defendant,

### MATTHEW LEDVINA,

conspired with Tobin, Patel, Knox and others known and unknown to the United States Attorney to commit an offense against the United States, specifically, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, that is, to: knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person in connection with the purchase and sale of securities, specifically various microcap stocks traded on the OTC market, including, but not limited to, EPTI.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1) and 28 U.S.C. § 2461(c))

28. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 25 of this Information and further charges that:

29. Upon conviction of the offense in violation of Title 18, United States Code, Section 371, as set forth in Count One of this Information, the defendant,

MATTHEW LEDVINA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and any property used in any manner or part, to commit, or to facilitate the commission of, such offenses.

30. If any of the property described in Paragraph 29 above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C) ), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 32 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

10

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: _____
ERIC S. ROSEN
Assistant U.S. Attorney

Date: November 27, 2018