1                  UNITED STATES DISTRICT COURT

2                   DISTRICT OF MASSACHUSETTS

3                              No. 1:18-cr-10445-WGY

4

5

6    UNITED STATES OF AMERICA

7

8    vs.

9

10   MATTHEW LEDVINA

11

12                        * * * * * * * * *

13

14                      For Hearing Before:
                         Judge William G. Young
15

16                         Change of Plea

17

18                     United States District Court
                       District of Massachusetts (Boston)
                       One Courthouse Way
19                     Boston, Massachusetts 02210
                       Thursday, January 31, 2019
20

21                        * * * * * * * *

22

23            REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
                   United States District Court
24        One Courthouse Way, Room 5510, Boston, MA 02210
                      bulldog@richromanow.com
25

```
1                    A P P E A R A N C E S

2

3   ERIC S. ROSEN, ESQ.
        United States Attorney's Office
4       J. Joseph Moakley U.S. Courthouse
        1 Courthouse Way, Suite 9200
5       Boston, Massachusetts 02210
        (617) 748-3412
6       Email: Eric.rosen@usdoj.gov
        For the United States
7

8   THOMAS E., ZEHNLE, ESQ.
        Law Office of Thomas E. Zehnle
9       601 New Jersey Avenue, NW
        Suite 620
10      Washington, DC 20001
        (202) 368-4668
11      Email: Tezehnle@gmail.com
   and
12   WILLIAM J. LOVETT, ESQ.
        Hogan Lovells, US, LLP
13      100 High Street, 20th Floor
        Boston, MA 02110
14      (617) 371-1037
        Email: William.lovett@hoganlovells.com
15      For the defendant

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2                  (Begins, 2:10 p.m.)
 3                  THE CLERK:  Now hearing Criminal Matter
 4     18-10445, the United States of America versus Matthew
 5     Ledvina.
 6                  THE COURT:  Good afternoon.  Would counsel
 7     identify themselves.
 8                  MR. ROSEN:  Good afternoon, your Honor, Eric
 9     Rosen for the government.
10                  MR. ZEHNLE:  Good afternoon, your Honor,
11     Thomas Zehnle on behalf of the defendant, Mr. Ledvina.
12                  MR. LOVETT:  Good afternoon, your Honor,
13     William Lovett on behalf of Mr. Ledvina.
14                  THE COURT:  And he's present in the courtroom?
15                  MR. ZEHNLE:  Yes.
16                  THE COURT:  Do I understand he desires to
17     tender a plea of not guilty?
18                  MR. ZEHNLE:  That is correct, your Honor.
19                  THE COURT:  He may come forward to be inquired
20     of it.
21                  (THE DEFENDANT, sworn.)
22                  THE COURT:  Could you state your full name.
23                  THE DEFENDANT:  Matthew Conway Ledvina.
24                  THE COURT:  Mr. Ledvina, my name is Bill
25     Young, I'm the judge who presides in this session of the
```

1    court.  Now your lawyer has indicated that you're

2    prepared to plead guilty to this one-count information.

3    Before I can let you plead guilty, and it's up to me,

4    there's certain things that I have to find out.

5         I have to find out that you know what you're

6    doing, that your plea of guilty is knowing.  I have to

7    find out that you know what may happen to you, what may

8    happen to you if you plead guilty.  I have to find out

9    that you want to plead guilty --

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  -- that your plea is voluntary.

12   So in a very real sense you're in the driver's seat

13   here.  You don't have to plead guilty.  If you decide

14   not to plead guilty, I'm fine with that, that won't make

15   me angry, it won't mess up my afternoon, I'll get your

16   case on track for trial.

17        You must understand that I will never punish you

18   because you went to trial.  As we go along here we'll

19   talk about what guidance I expect I will receive from

20   the sentencing guidelines if you plead guilty.  You must

21   understand that if you go to trial, I will still be

22   considering the same guidance as I would if you pled

23   guilty, were you to be found guilty.  So they'll be no

24   punishment if you go to trial.

25        Are you clear on that?

1            THE DEFENDANT:  Yes I understand, your Honor.

2            THE COURT:  Very well.

3        So to find these things out, we're going to talk,

4    I'm going to ask you questions, and if you don't

5    understand some question I'm asking you, stop me,

6    because you have to understand it in order to -- I need

7    to get an honest and complete answer.

8        If at any time you want to talk to your attorney,

9    just turn the chair around, I'll step away, you can talk

10   privately with your attorney.  If at any time, as you

11   size me up, because I will be the judge who passes

12   sentence -- not today, but at an appropriate time, so if

13   at any time you want to stop, just tell me you want to

14   stop, that's fine, we'll move on to get the case ready

15   for trial.

16        You understand that?

17            THE DEFENDANT:  Yes, I understand.

18            THE COURT:  All right.  Let's start with the

19   "Do you know what you're doing?"

20        How old are you, sir?

21            THE DEFENDANT:  46.

22            THE COURT:  How far did you go in school?

23            THE DEFENDANT:  Um, to, um -- I graduated

24   from, um, a Juris Doctor, the JD program, and then I had

25   a master's in law and taxation.

1          THE COURT:  All right.  Have you ever been

2   treated for a mental illness?

3          THE DEFENDANT:  Never.

4          THE COURT:  Are you aware of any mental

5   illness or problem that you may have today?

6          THE DEFENDANT:  No, I'm not, sir.

7          THE COURT:  Are you taking any medication

8   today?

9          THE DEFENDANT:  No.

10          THE COURT:  Under the influence of any drug?

11          THE DEFENDANT:  No.

12          THE COURT:  Under the influence of alcohol?

13          THE DEFENDANT:  No.

14          THE COURT:  Do you know what you're charged

15   with?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Tell me.

18          THE DEFENDANT:  Conspiracy to, um, commit

19   securities fraud.  I'm sorry.

20          THE COURT:  It's not a test, but that's

21   exactly right.

22          THE DEFENDANT:  I was about to say securities

23   to, um -- well something else, but, yeah.

24          THE COURT:  It's a one-count information.

25          THE DEFENDANT:  Uh-huh.

1          THE COURT:  Now before you can be found guilty

2     of this count, the government is going to have to prove

3     that you engaged in this conspiracy to commit securities

4     fraud.  To prove conspiracy, the government has to prove

5     three things.

6          First, that you knowingly engaged with one or more

7     co-conspirators -- not with undercover police officers

8     or informants, but actual conspirators, you knowingly

9     engaged in an agreement, a deal to do something that the

10    law forbids.

11         You are not guilty of conspiracy if you hung

12    around with the wrong people.  You're not guilty of

13    conspiracy if you knew that other people were in on some

14    deal to commit securities fraud and you did nothing

15    about it, you didn't help it, but you didn't report it

16    or do anything to stop it, that doesn't make you a

17    conspirator.  You're a conspirator if you agreed with

18    one or more of these conspirators to do an act or acts

19    that the law forbids.  The agreement doesn't have to be

20    in writing, it doesn't have to be a handshake, it

21    doesn't have to be a wink or a nod, but it has to be a

22    genuine deal, an actual agreement, knowing that you're

23    going to get into something to violate the law in a

24    particular way.

25         THE DEFENDANT:  I understand, your Honor.

1          THE COURT:  The second point is that the

2   government has to prove the particular way that you and

3   the other conspirators agreed to violate the law.

4        Now this conspiracy, as it is alleged here, is a

5   conspiracy to commit securities fraud.  "Fraud" is to

6   make a statement of material fact -- "material" means a

7   statement of a fact that makes a difference to the

8   hearing which you know is untrue, to make a false

9   misstatement of material fact with the intent that the

10  other person, the hearer, part with money or property.

11  That's fraud.

12          THE DEFENDANT:  Yes.

13          THE COURT:  "Securities fraud" is to make such

14  a statement or to fail to make a statement of material

15  fact in circumstances where an accurate statement is

16  called for, again with the intention that somebody else

17  surrender or turn over or part with money or property in

18  connection with the purchase or sale of securities.  And

19  "securities" is a defined term, it covers stock and

20  other instruments of trade.

21          THE DEFENDANT:  Yes.

22          THE COURT:  Now that's what they charge.  So

23  the government has to prove those two things.

24        Third, the government has to prove that in order

25  to carry out this conspiracy, at least one of the

1    conspirators -- not necessarily you, but one of them,

2    did something to help make the conspiracy come about.

3          Do you understand?

4               THE DEFENDANT:  Yes, I understand, your Honor.

5               THE COURT:  Now, Mr. Rosen, are there any

6    enhancements here, loss enhancements or any other type

7    of enhancements that the government seeks to prove?

8               MR. ROSEN:  Well, your Honor, there are no

9    enhancements beyond the, you know, the base offense

10   level plus the loss amount, which in this case is

11   between $9.5 million and $25 million, and then there's a

12   two-level enhancement for the fact that most of the

13   criminal conduct occurred outside the United States.

14   But he also gets two levels off for, um, being a minor

15   participant in the criminal conduct.

16               THE COURT:  Well that may be your calculation.

17               MR. ROSEN:  Right, that's my calculation.

18               THE COURT:  But I'm concerned with

19   enhancements, things that might make the sentence worse,

20   and you tell me that there are two, and that's the

21   amount and the fact that the bulk of the actions took

22   place outside of the United States of America, is that

23   correct?

24               MR. ROSEN:  That's correct, your Honor.

25               THE COURT:  We have complex sentencing laws,

1    our sentencing laws are quasi-determinate, they give any

2    judge -- they give me a framework within which I can

3    derive a fair and a just sentence.  And I require that

4    anything that the government would say to me, would

5    argue to me -- if you plead guilty, anything they would

6    argue to me that would make the sentence higher -- that

7    would enhance it, if we go to trial, I'll make them

8    prove that on evidence to the jury, and the jury's going

9    to have to agree unanimously, beyond a reasonable doubt,

10   that in fact that enhancement applies before I consider

11   it, and they say there's two, the amount of the loss and

12   the fact that the conduct, what conduct there was,

13   primarily took place outside of the United States.

14        Do you understand that in this session of the

15   court, if you go to trial, I'll make the government

16   prove those things before I consider them all at the

17   time of sentencing.

18        You understand that?

19             THE DEFENDANT:  I understand, your Honor.

20             THE COURT:  All right.  Let's talk about your

21   rights and let's start with the fact that they're

22   proceeding by way of something they call an

23   "information."  There's nothing the matter with that, in

24   terms of procedure, it's a perfectly appropriate way to

25   proceed if you agree to it.

1           THE DEFENDANT:  Uh-huh.

2           THE COURT:  Now this is a sufficiently serious

3    crime that's alleged that you have the right to be

4    indicted, which means you have the right to make the

5    government first present its evidence or explain its

6    evidence to a grand jury of the people.  The grand jury

7    sits in secret, you have no right to be there, nor does

8    your attorney.  The grand jury only votes by majority

9    vote.  The grand jury doesn't decide whether you're

10   guilty or not guilty, the grand jury, by majority vote,

11   decides whether there is probable cause to believe that

12   you have committed the crime.

13        The advantage to you of a grand jury proceeding is

14   that if the grand jury votes a no-bill, decides not to

15   indict you, then the government may never come after you

16   for this crime.

17        You understand that's what a grand jury is for?

18           THE DEFENDANT:  Yes, I understand a grand

19   jury.

20           THE COURT:  You've talked all this over with

21   your attorney?

22           THE DEFENDANT:  I have, your Honor.

23           THE COURT:  Now I've been given this waiver of

24   indictment.

25        Is that your signature there?

1              THE DEFENDANT:  Yes, I've read it and signed

2       it.

3              THE COURT:  And that's after talking with your

4       attorney, he's also signed it?

5              THE DEFENDANT:  Correct.

6              THE COURT:  And do I understand that you do

7       waive indictment?  I mean all that means is, it doesn't

8       mean you're guilty, it just means you're going to

9       respond now to this information, that when it comes time

10      to arraign you, it's going to be on this information,

11      and that's how we're going to proceed.

12             THE DEFENDANT:  I do understand.

13             THE COURT:  Very well.

14          I find that Matthew Ledvina knowingly,

15      intelligently, and voluntarily waives his right to

16      indictment.

17          Let's talk about your rights now, were we to go to

18      trial, on this information.  You've got the right to a

19      fair and impartial trial before a jury.  At this trial

20      the government is going to have to prove the case beyond

21      a reasonable doubt to a jury of the people.  Through

22      your attorney you'll have some say in who sits on that

23      jury.

24          At the trial you have the right to confront the

25      evidence against you.  Now to "confront" it means you

1    can sit right here in court, watch the witnesses as they

2    testify, but far more important you can have Mr. Zehnle

3    --

4              MR. ZEHNLE:  "Zehnle," your Honor.

5              THE COURT:  -- you can have Mr. Zehnle

6    cross-examine those witnesses, and call witnesses on

7    your behalf, make arguments on your behalf, you can take

8    the stand and testify on your own behalf --

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  -- and you have the right to all

11   those things.  And equally you have the right to refrain

12   from doing any of it.  You certainly don't have to

13   testify.  You don't have to allow Mr. Zehnle to do a

14   thing, he doesn't have to question witnesses or make

15   arguments or call witnesses.

16        To the extent you are silent, I'm going to tell

17   the jury you're an innocent man, I'll tell the jury you

18   start the trial innocent.  And so if anything is left

19   out, they can't hold that against you.  And I'll tell

20   them that.  It's the government that brought this

21   charge, the government has to prove this charge beyond a

22   reasonable doubt, plus these enhancements.

23        You understand that?

24             THE DEFENDANT:  Yes, I do understand.

25             THE COURT:  All right.

1      Now part of that, saying you start innocent, that

2  applies to me in full force.  I don't know who you are.

3  This is the first time we've met.  I don't know anything

4  about this case.  I looked at this legal paper, it

5  doesn't count for anything, it just frames the issue,

6  gives me some idea of what questions to ask you.  I take

7  you as an innocent man.

8      If you plead guilty, all -- I'm not giving you

9  anything, telling you these things, these things are

10  your rights.

11      Do you understand that if you plead guilty, you've

12  given these rights all away, all of them?

13           THE DEFENDANT:  Yes, I understand, your Honor.

14           THE COURT:  So they'll be no trial, you're

15  never going to see the evidence against you here, the

16  closest we'll come is when we're through -- when I'm

17  through asking questions, I'll ask Mr. Rosen, I'll say

18  "Well, what do you think you can prove?" and briefly

19  he's going to explain what he thinks he can prove, and

20  I'll ask you whether that's true.  But that's as close

21  to evidence as I'm coming.  That's all I'm going to hear

22  or need to hear.

23           THE DEFENDANT:  Um-hum.

24           THE COURT:  You still have the right to be

25  silent, if you plead guilty, up until the time I

1   sentence you, but after that your Fifth Amendment right

2   to silence, that's gone.  And so if this is a genuine

3   conspiracy and there's other conspirators and there's

4   another trial or something of somebody else who's a

5   conspirator in this conspiracy, you can be required to

6   testify.

7           You understand that?

8               THE DEFENDANT:  Yes, I understand that.

9               THE COURT:  And not the least important, you

10  go from being innocent, really innocent in my eyes, to

11  being guilty, right here this afternoon, and all that

12  remains is what sentence -- not today, but at an

13  appropriate time, what sentence I'm going to impose upon

14  you.

15          Do you understand?

16              THE DEFENDANT:  I do understand.

17              THE COURT:  Now I've mentioned that our

18  sentencing law is quasi-determinate and before we go any

19  further you need to know -- and I'm going to ask

20  Mr. Rosen -- not that I'm not going to talk to

21  Mr. Zehnle at the time of sentencing, I'll talk to you,

22  but now I'm talking to the prosecutor, and I want

23  certain answers to him which inform me of what is the

24  worst I can do to you in the way of sentencing.  So you

25  listen to what he has to say because it's important that

1   you understand these things.

2        So, Mr. Rosen, you know my practice, assume that

3   the enhancements are proved as well as the underlying

4   offense, what's the top of the applicable guideline

5   absent any reductions, any reduction at all, and lastly,

6   um, or rather secondarily, taking any reduction with

7   which you agree, what is the guideline range?

8        MR. ROSEN:  Yes, your Honor.  Well the maximum

9   would be then the statutory maximum of the crime, which

10  is 5 years, or 60 months.  Assuming that the Court and

11  the parties all agree on what I believe are the correct

12  reductions, the guideline sentence range would be 46 to

13  57 months.  So I guess your maximum would be 57 months,

14  your Honor.

15       THE COURT:  No, my maximum would be 60 months

16  --

17       MR. ROSEN:  60, sorry, yes, your Honor.

18       THE COURT:  -- which is the highest without

19  any reductions for the plea or for minor participant.

20  But you're telling me, making those reductions, the

21  range is going to be 46 to 57 months?

22       MR. ROSEN:  That's correct.

23       THE COURT:  All right.  Thank you.

24       And looking here at these documents that you've

25  provided, your recommendation is, um, for starters, it's

1    low end, correct?

2              MR. ROSEN:  That's correct.

3              THE COURT:  All right.

4        Okay, now the way I read the Constitution -- well

5    it's not my reading of the Constitution, in this case

6    Congress has set the highest sentence that any judge

7    could impose and that sentence is 60 months in prison, 5

8    years in prison.

9        Do you understand that if you plead guilty here

10   today, I can sentence you to prison for 5 years.  You

11   understand that?

12             THE DEFENDANT:  Yes, your Honor, I understand.

13             THE COURT:  And if the sentencing guidelines

14   -- and they're only guidelines, but if the guidelines

15   work out as Mr. Rosen said as he thinks they'll work

16   out, the guideline range they'll recommend to me -- I

17   can go lower, I can go higher, but the guideline range

18   is not less than 46 months -- almost 4 years, and not

19   more than 57 months.

20       Do you understand that?

21             THE DEFENDANT:  Yes, I understand.

22             THE COURT:  Now in this case I've been given

23   these documents.  Please take them.

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  And please take this.

1              (Hands to defendant.)

2              THE COURT:  And are those your plea agreement

3     documents?

4              THE DEFENDANT:  Yes, they are.

5              THE COURT:  And where your signature appears

6     there, is that in fact your signature?

7              THE DEFENDANT:  That is my signature.

8              THE COURT:  And have you read all these

9     documents, start to finish?

10             THE DEFENDANT:  I have read them, your Honor.

11             THE COURT:  And have you consulted with your

12     attorney about them?

13             THE DEFENDANT:  I have.

14             THE COURT:  All right.  May I see them.

15             (Hands back to judge).

16             THE COURT:  You understand that this is your

17     agreement with the United States Attorney's Office.  If

18     you do what you're expected to do under this agreement,

19     you can require that they make the recommendation, that

20     low-end recommendation that they say.

21         You understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  But it does not bind me.  I will

24     impose the sentence that I believe is fair and just, but

25     it can't be more than 5 years.

1          Do you understand that?

2               THE DEFENDANT:  I do.

3               THE COURT:  Now take a look at this paragraph

4     here.  You understand that -- yes, that paragraph.

5               THE DEFENDANT:  Oh, yes.

6               THE COURT:  What -- what they're agreeing is

7     nothing more than to provide certain information to the

8     court.

9          Do you understand that?

10              THE DEFENDANT:  Yes, I do understand.

11              THE COURT:  And, um, what I do with it is

12    entirely up to me.

13         You're clear on that?

14              THE DEFENDANT:  Yes, I'm clear.

15              THE COURT:  Other than these documents, has

16    anyone made any promise to you, any agreement with you

17    that's caused you to plead guilty?

18              THE DEFENDANT:  No there's no other

19    agreements.

20              THE COURT:  Has anyone threatened you with

21    anything to get to you plead guilty?

22              THE DEFENDANT:  No one has threatened me.

23              THE COURT:  Are you covering up for someone

24    else by pleading guilty yourself?

25              THE DEFENDANT:  No, I'm not, sir.

1          THE COURT:  I've looked at the material

2     here -- well it's not important, I'll state it in a

3     general way.  If you are not a citizen of the United

4     States, you understand that conviction of this crime may

5     have the consequence of your being deported from the

6     United States, denied admission to the United States,

7     denied naturalization under the laws of the United

8     States.

9          Do you understand that?

10          THE DEFENDANT:  I understand.

11          THE COURT:  Have you had enough time to talk

12     all this over with Mr. Zehnle?

13          THE DEFENDANT:  I have.

14          THE COURT:  And do you think he's been a good

15     attorney for you?

16          THE DEFENDANT:  Yes, a very good attorney.

17          THE COURT:  Do you think he's gotten for you

18     those things that are your rights here under the law?

19          THE DEFENDANT:  Yes, he's explained them and I

20     understand all my rights.

21          THE COURT:  Are you satisfied with his

22     representation of you?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you still want to plead guilty?

25          THE DEFENDANT:  Yes.

1           THE COURT:  Why?

2           THE DEFENDANT:  Because I want to, um -- I

3   want to admit that I participated in this and I want to,

4   um, close the matter, if you'd like.

5           THE COURT:  Um, just to say it straight.  The

6   "this" here is a conspiracy to commit securities fraud,

7   is that how you understand it?

8           THE DEFENDANT:  Yes, it is.

9           THE COURT:  All right.

10       Now I'm going to turn to Mr. Rosen and just -- he

11  can be brief, and I want him only to touch on the

12  elements of the offense and the enhancements that we

13  talked about, and he's going to tell me what he hopes he

14  can prove if we went to trial.  Listen because I'm going

15  to ask you whether those things are true.

16       Mr. Rosen.

17           MR. ROSEN:  And briefly, your Honor.

18       The defendant is a citizen, a resident of

19  Switzerland, and he, together with others, including

20  charged co-defendants Milan Patel, Morrie Tobin, and

21  Roger Knox, engaged in a deceptive scheme to sell

22  publicly-traded stock to investors.  Primarily two

23  issuers at issue here, one is the Stock, EPTI, and

24  Morrie Tobin was what's known as the "control group,"

25  and Morrie Tobin and others conspired to defraud

investors by essentially concealing his ownership of the

shares so that people wouldn't know who owned the shares

when Morrie Tobin went to sell it, that would facilitate

the eventual pump-and-dump of stock called EPTI.

What Mr. Ledvina did and Mr. Patel did was assist

in that fraud by helping them to conceal ownership of

the shares by creating what's known as "nominee entity

companies," one of which was registered in Mr. Ledvina's

own name, and he did that knowing that Mr. Tobin

controlled the actual shares.

The stock, EPTI, was the subject of the pump-and-

dump in June of 2017, it was traded over the Silverton

trading platform, which is owned by defendant Roger

Knox, who's charged and arrested.  His business was

based in Switzerland, which accounts for the two-level

enhancement, as was Mr. Ledvina, and, um, for part of

the time Mr. Patel as well.  Marketing materials for the

pump-and-dump were sent to investors in Massachusetts

and Massachusetts investors purchased the stock.

The plan was for Mr. Tobin eventually to transfer

the stock into Silverton and have it be sold through a

number of brokerages while concealing Mr. Tobin's role.

Mr. Patel and Mr. Ledvina had an agreement with Tobin

that essentially they would be paid approximately 4.5

percent of the group's net-trading proceeds from the

1    pump-and-dump of this and other schemes.

2         Again, as I've said, Mr. Ledvina and Mr. Patel

3    created these beneficial ownerships where they

4    transferred the stock into nominee entities and then on

5    to Silverton.  They transferred, I believe,

6    approximately, um, 12 -- about -- sorry, 8 to 10 million

7    shares into Silverton that were freetrading shares.  And

8    that's important for them for the loss amount and

9    intended loss because the average sales price during the

10   pump-and-dump was approximately $1.48, which results in

11   an intended loss of about, um, somewhere in the order of

12   about $15 to 16 million.  And the pump-and-dump, though

13   it began in June of 2017 -- June 12th of 2017 and up

14   through June 27th of 2017, in that time period Silverton

15   sold approximately $1.5 million worth of shares.

16        So the actual loss is about $1.5 million, but the

17   calculation that we -- that the parties have agreed on

18   is intended loss, which accounts for a sale of all of

19   the shares transferred into the Silverton brokerage that

20   were filtered through the nominee entities created by

21   Mr. Ledvina and his co-conspirator, Mr. Patel.

22             THE COURT:  Did you hear what Mr. Rosen had to

23   say?

24             THE DEFENDANT:  Oh, yes.

25             THE COURT:  Do you understand it?

1          THE DEFENDANT:  I do understand.

2          THE COURT:  Are those things true?

3          THE DEFENDANT:  Um -- yes.

4          THE COURT:  You hesitate.  Is there any part

5   of it you claim is not true?

6          THE DEFENDANT:  Um, no, I agree to what

7   Mr. Rosen said.

8          THE COURT:  Well you agree because it's true

9   or you agree because you want to get this over with?

10          THE DEFENDANT:  Um, I agree that it's true,

11   although I -- yeah, I understand everything.  I agree

12   that it's true.  Yeah.

13          THE COURT:  Is something not true?  And I'm

14   not trying to --

15          THE DEFENDANT:  No, I --

16          THE COURT:  And it makes a difference for this

17   reason.  I truly have to be sure that this is actually

18   voluntary on your part, and when it comes time to

19   sentence you, I'm going to believe this stuff.  So if

20   it's true as to all the elements, but part of it isn't

21   true, well, who knows, that might make a difference to

22   me.  So tell me if it's not all true.

23      Is it true?

24          THE DEFENDANT:  It is all true.

25          THE COURT:  Very well.

1          I do find that Mr. Matthew Ledvina, knowingly,

2    intelligently, and voluntarily, exercises his right to

3    plead guilty upon arraignment to this one-count

4    information.

5          Now this is the most serious point here.

6              THE DEFENDANT:  Yes.

7              THE COURT:  You're going to be arraigned --

8    Oh, one other right you have.

9          Have you read this information, the charge?

10             THE DEFENDANT:  Yes, I have, your Honor.

11             THE COURT:  Have you talked it all over with

12   your attorney?

13             THE DEFENDANT:  I did, entirely.

14             THE COURT:  Now going back to the days when

15   many people couldn't read, you have the right at

16   arraignment to have the charge read out in open court.

17        Do you want the Clerk to do that or do you waive

18   the reading?

19             THE DEFENDANT:  I waive the reading.

20             THE COURT:  All right, he waives the reading

21   of the information.

22        Now what's important is she's going to ask you how

23   you plead, guilty or not guilty.  If you plead not

24   guilty, that's fine, we'll get the case ready for trial.

25   If you plead guilty, you're guilty, no taking it back or

```
 1    starting over.

 2          Do you understand?

 3               THE DEFENDANT:  Yes, I do understand.

 4               THE COURT:  The Clerk may arraign Mr. Ledvina.

 5               THE CLERK:  Mr. Ledvina, the United States

 6    Attorney has charged you in a one-count information for

 7    conspiracy to commit securities fraud in violation of

 8    Title 18, United States Code, Section 371.

 9          How do you now plead to Count 1, guilty or not

10    guilty?

11               THE DEFENDANT:  Guilty.

12               THE COURT:  Thank you.  You may step down.

13               (Defendant steps down.)

14               THE COURT:  I propose sentencing for Thursday,

15    the 25th of April, at 2:00 p.m.

16          How does that suit, Mr. Rosen?

17               MR. ROSEN:  It's fine, your Honor.

18               THE COURT:  And how about Mr. Zehnle?

19               MR. ZEHNLE:  Pardon me, your Honor, that date

20    again?

21               THE COURT:  Thursday the 25th of April.

22               (Pause.)

23               THE COURT:  At 10:00.

24               MR. ZEHNLE:  That's fine, your Honor.

25               THE COURT:  All right.
```

1       Can you go now, while you're here with your

2   client, to probation so that they may start a

3   presentence report?

4               MR. ZEHNLE:  Yes, your Honor.

5               THE COURT:  All right.

6           And the status of bail, Mr. Rosen?

7               MR. ROSEN:  $50,000 unsecured, your Honor, of

8   bail.

9               THE COURT:  What about his passports?

10              MR. ROSEN:  He's a --

11              PROBATION OFFICER:  Um, your Honor, he's --

12              THE COURT:  I looked at the probation officer,

13  but I'm delighted to hear from you, Mr. Rosen.  But I

14  looked at the probation officer, so we'll hear first

15  from her.

16              PROBATION OFFICER:  I think we'll probably say

17  the same thing, but he has a Swiss passport and a French

18  passport and he has those on his possession and he needs

19  them to travel back to Europe.  So in this particular

20  case we're not asking for a surrender of the passports.

21              THE COURT:  You agree, Mr. Rosen?

22              MR. ROSEN:  I do, your Honor.

23              THE COURT:  Very well, the Court adopts the

24  recommendation, $50,000 unsecured bail.

25          And there is the requirement of reporting?

1          PROBATION OFFICER:  Exactly.

2          THE COURT:  And the Clerk will put that in the

3     provisions.  Very well.

4          MR. ROSEN:  Thank you, your Honor.

5          THE COURT:  Thank you.

6     We'll recess.

7          (Ends, 2:40 p.m.)

1              C E R T I F I C A T E

2

3         I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

4    do hereby certify that the foregoing record is a true

5    and accurate transcription of my stenographic notes,

6    before Judge William G. Young, on Thursday, January 31,

7    2019, to the best of my skill and ability.

8

9

10

     /s/ Richard H. Romanow 03-19-19

11   _____

     RICHARD H. ROMANOW  Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25