```
 1                  UNITED STATES DISTRICT COURT

 2                   DISTRICT OF MASSACHUSETTS

 3                              No. 1:18-cr-10445-WGY

 4

 5     UNITED STATES OF AMERICA

 6

 7     vs.

 8

 9     MATTHEW LEDVINA

10

11                         * * * * * * * * *

12

13                      For Hearing Before:
                        Judge William G. Young
14

15                         Sentencing

16

17                   United States District Court
                     District of Massachusetts (Boston.)
                     One Courthouse Way
18                   Boston, Massachusetts 02210
                     Wednesday, June 3, 2020
19

20                         * * * * * * * *

21

22             REPORTER: RICHARD H. ROMANOW, RPR
                      Official Court Reporter
23                 United States District Court
           One Courthouse Way, Room 5510, Boston, MA 02210
24                    bulldog@richromanow.com

25
```

```
 1                    A P P E A R A N C E S

 2

 3    ERIC S. ROSEN, ESQ.
         United States Attorney's Office
 4       One Courthouse Way, Suite 9200
         Boston, Massachusetts 02210
 5       (617) 748-3412
         E-mail: Eric.rosen@usdoj.gov
 6       For the United States of America

 7

 8    THOMAS E. ZEHNLE, ESQ.
         Law Office of Thomas E. Zehnle
 9       Suite 620
         Washington, DC 20001
10       (202) 368-4668
         Email: Tezehnle@gmail.com
11   and
      WILLIAM J. LOVETT, ESQ.
12       Hogan Lovells US LLP
         125 High Street, Suite 2010
13       Boston, MA 02110
         (617) 371-1000
14       Email: Lovett@hoganlovells.com
         for the defendant
15

16

17

18

19

20

21

22

23

24

25
```

```
1              P R O C E E D I N G S

2          (Begins, 9:00 a.m.)

3          THE CLERK:  Now hearing Criminal Matter 18-10445,

4    the United States of America versus Matthew Ledvina.

5          THE COURT:  Good morning, counsel, and

6    Mr. Ledvina.  This is a proceeding held via Zoom, it's

7    hosted by my Courtroom Deputy Clerk, Jennifer Gaudet,

8    and on the line is my Court Reporter, Richard Romanow,

9    counsel for each of the parties, and, um, our probation

10   officer.  Because it is an official court proceeding, it

11   is open to the public.  I do not know if any members of

12   the public are present, but they are of course welcome.

13   And if they are, I say to them that you must keep your

14   microphones muted, and you should understand that the

15   rules of court remain in full force and effect.  Excuse

16   me.  And, um, that means they'll be no streaming,

17   transcribing, recording, or taping of these proceedings.

18          All right.  That said, we're ready to begin.  And

19   as I've said, this is a sentencing under 18 United

20   States Code, Section 3553(a).  Would counsel introduce

21   themselves and who they represent.

22          MR. ROSEN:  Good morning, your Honor, Eric Rosen

23   for the government.

24          THE COURT:  Good morning.

25          MR. LOVETT:  Good morning, your Honor, William
```

1   Lovett on behalf of Mr. Ledvina.

2         MR. ZEHNLE:  Good morning, your Honor, Thomas

3   Zehnle on behalf of Mr. Ledvina, who is also present.

4         THE COURT:  Thank you.  And you have no objection

5   if I talk to him directly, do you?

6         MR. ZEHNLE:  No, your Honor.

7         THE COURT:  Mr. Ledvina, this is a proceeding, um

8   -- I'm not clear whether you can see your counsel in

9   this proceeding, but can you see me, sir?

10        THE DEFENDANT:  Yes, I can, your Honor, and I can

11   also see counsel.

12        THE COURT:  Very well.  So this proceeding is

13   going forward by way of Zoom and there are a few things

14   that you need to be clear on and that's why I asked

15   permission to talk to you directly.

16        Under the Cares Act passed by Congress in the wake

17   of this pandemic, proceedings such as this are

18   authorized and -- by law and have full force and effect.

19   First, um, they are enabled by a declaration of

20   emergency by the United States Judicial Conference, that

21   has occurred.  And second, in the courts involved, in

22   this case the United States District Court for the

23   District of Massachusetts, it has authorized proceedings

24   by way of Zoom.  In this case our Chief Judge, Dennis

25   Saylor, upon unanimous vote of the court has so

 1    authorized these proceedings.

 2          The penultimate requirement, but it's

 3    extraordinarily important to you, sir, is that I cannot,

 4    under the law, proceed in this wise unless you agree to

 5    it.  And so let me ask you.

 6          Have you talked over with your counsel -- I don't

 7    want to know what you and your counsel have said

 8    obviously, but have you talked over with your counsel

 9    proceeding through a sentencing by way of Zoom?

10          THE DEFENDANT:  Yes, I have, your Honor,

11    extensively discussed it --

12          THE COURT:  All right.

13          THE DEFENDANT:  And thank you for granting me an

14    ability to do this.

15          THE COURT:  Well I take it that you do choose to

16    proceed by way of Zoom.  And you understand that your

17    agreement has no bearing on the merits, on the outcome,

18    it's the same thing as if we were in the courtroom where

19    I usually sit here in Boston, it's just that because

20    we're at a distance, I cannot proceed unless you agree.

21          And do I take it that you do agree, um, after

22    talking with your attorney?

23          THE DEFENDANT:  Yes, I do agree, your Honor.

24          THE COURT:  And then the final requirement is

25    this.  I must find that the circumstances are such that

1    it is appropriate and advisable, in the interests of

2    justice, to proceed in this fashion.  And let me consult

3    counsel on that, and we'll start with Mr. Rosen.

4         Mr. Rosen, why are we doing this by Zoom rather

5    than waiting until we can all be back in the courthouse?

6    It may not be just because Mr. Ledvina is, at present,

7    overseas.

8         MR. ROSEN:  Well I think that's one reason, your

9    Honor.  I think that the, um -- the Covid pandemic makes

10   it difficult to schedule any person, um, for scheduling

11   in person as opposed to via Zoom, but it's particularly

12   difficult from an overseas perspective given the

13   inherent risk of traveling, um, and either, you know,

14   bringing himself to Massachusetts at this time from

15   overseas, with any type of quarantine, um, and obviously

16   some type of curfew from that.

17        I also think that, you know, he has been pending

18   sentencing for a significant period of time right now

19   and in the interest of wrapping up cases and having a

20   speedy sentencing, I do think a sentencing going forward

21   over Zoom as opposed to in person at a later date is

22   appropriate.

23        THE COURT:  Thank you.  Let me ask defense

24   counsel.  Why do you favor this method of proceeding?

25        MR. ZEHNLE:  Well, your Honor, I think I would

1    echo what Mr. Rosen said.  As the Court may remember,

2    um, Mr. Ledvina came in and entered his change of plea

3    in January of 2019, so we're roughly a year and a half

4    after that.  It's difficult, if not possible, to

5    identify when he would be available to come in person

6    before this court.

7        In truth, Mr. Ledvina and myself -- and I'm sure

8    Mr. Rosen, but I won't speak for him, would prefer to be

9    having, you know all things being equal, in person, but

10   because of the indeterminate amount of delay that this

11   might create, um, we believe -- and my client and I have

12   discussed it extensively as he has told this Court, that

13   we should proceed via Zoom.

14       THE COURT:  Very well.  The Court does find then

15   that the extraordinary circumstances exist and it is in

16   the interests of justice to proceed in this fashion.

17       In this case the government has filed a motion and

18   the Court allows the motion, but that does not mean that

19   the government -- that the Court adopts the government's

20   view on sentencing, but the Court allows the motion.

21       A sentencing in this session of the court takes

22   place in these circumstances in three steps and I will

23   go through them.

24       First, I have reference to all the publicly-

25   available databases to see what sentences judges

1    actually imposed and through the good auspices of the

2    Official Court Reporter in this session, Richard

3    Romanow, and his predecessor, Donald Womack, I have a

4    database of all sentences that I have imposed.

5         I've only sentenced for this particular offense

6    six times, but the average of those sentences has been 3

7    years imprisonment.  I do not sentence from any

8    algorithms, I mention that average simply for what it

9    is, it's an average, it gives me some idea of the weight

10   to be given to the advisory sentencing guidelines.

11        Second, it's my duty accurately to calculate the

12   sentencing guidelines.

13        And then third, we must move to fashioning a

14   nuanced fair and just sentence for Mr. Ledvina having in

15   mind the needs and the goals of sentencing under the law

16   and also his personal circumstances.

17        So let me go through the sentencing guidelines

18   calculation.  If counsel would differ with any of the

19   Court's calculations, um, I want you to interrupt me and

20   we'll deal with it.

21        In this case the base offense level is 6.  In view

22   of the expected loss, I add 20 levels, and in view of

23   the foreign involvement, I add another 2 levels.

24        Now I have a question for the probation officer.

25   Mr. Ledvina's an attorney and one would think another

1  two levels should have been added because of the

2  sophisticated means and his professional skill.  I don't

3  see that in the presentence report.

4       Is that covered by some other area?  Why isn't

5  that there?

6       PROBATION OFFICER:  Your Honor, the sophisticated

7  means -- let me double-check my book right now, but I

8  believe it's under the same docket line as the plus-2

9  that was applied for it occurring outside of the United

10 States.

11      THE COURT:  And so it would be double-counting?

12      PROBATION OFFICER:  So it would be.  Let me just

13 pull that up in my guideline book right now.  (Pause.)

14 It is, your Honor.  It's just a different subsection.

15 So sophisticated means is, um, Subsection (c) of

16 2(b)(1.1)(B) (i)(10) and then relocating it from outside

17 of the United States is Subsection (b).  So it's the

18 same guidelines.  So at most you can get 2 for that.

19 And so he has a 2 for that.

20      As far as, um, any type of enhancement for use of

21 a special skill as an attorney, um, I don't believe that

22 his, um, occupation as an attorney was necessarily

23 relevant to his commission of this offense and his

24 criminal activity.  It certainly made him more

25 knowledgeable of different laws, but he didn't abuse a

1   particular trust, he didn't abuse the trust of his

2   employer, he didn't abuse the trust of any client, this

3   was a private deal that he entered into.  He essentially

4   was a nominee shareholder, which doesn't require a

5   special skill such as being an attorney, anyone could be

6   a nominee shareholder, he just happened to be involved

7   in the activity with other attorneys.  But it wasn't his

8   occupation that necessarily led to the commission of the

9   offense, it's just how he met some of the players.

10          THE COURT:  Thank you.  I accept that.  And then

11   I -- so we're at 28.  I deduct three levels for the

12   guilty plea, and that will take us back to 25.  So that

13   gives us a sentencing range here --

14          And again probation said it was 57 to what?

15          PROBATION OFFICER:  It's 57 to 60 months, your

16   Honor, because the offense of conviction has a 5-year

17   statutory maximum sentence.  So that can only extend as

18   far as 60 months.  So it would be 57 to 60 months under

19   the probation office's calculation.

20          THE COURT:  Thank you.  Well that's the

21   calculation adopted by the Court.

22          Mr. Rosen, do you agree?

23          MR. ROSEN:  Judge, the plea agreement called for a

24   2-level reduction under 3(b)(1.2) for a minor role and I

25   think the Commentary Application Note 3(a) is supportive

1       of that.  The application note says that a defendant who

2       is accountable under 1.1 --  1(b)(1.3) for a loss under

3       2(b)(1.1), which is what the guideline is here, that

4       greatly exceeds defendant's personal gain from a fraud

5       offense or if he had limited knowledge of the scope of

6       the scheme, he may receive an adjustment under this

7       guideline.  It specifically talks about somebody who's a

8       nominee owner and who received so little personal gain

9       relative to the loss amount.  I think that applies here

10      because Mr. Ledvina actually lost money on this scheme,

11      um, and the loss amount does greatly exceed the

12      defendant's personal gain.  He also had a limited

13      participation in that his primary role was to service a

14      nominee owner.

15             So I think based on that, I respectfully disagree

16      with the probation officer's calculation of the

17      guideline and I think a 2-level reduction does apply.

18             THE COURT:  I'll accept that and apply another 2

19      levels.  And that takes us to what range, if I go down

20      to 23?

21             MR. ROSEN:  It would be, um, 46 to 57 months, your

22      Honor.

23             THE COURT:  All right, it's 46 to 57 months.

24             MR. ROSEN:  That is correct.

25             THE COURT:  And as I've adjusted it, defense

1   counsel, do you agree with the guideline calculation

2   which is still required by the law?

3            MR. ZEHNLE:  Yes, we do, your Honor.

4            THE COURT:  All right, that's the guideline

5   calculation.

6            Now we turn to the, um, fashioning of a fair and a

7   just sentence for Mr. Ledvina.

8            But let me just parenthetically say something

9   which I think is appropriate and which will, um, not

10  bear on the sentence, except I think it's very effective

11  advocacy, and it's to defense counsel.  That's about the

12  best sentencing memorandum that I've read in a long

13  time, and I read them all and I read them very

14  carefully.  And I specifically, um, thought that your

15  working in the commentary of various letters -- many

16  people have letters but you wrote your sentencing

17  memorandum making very good use of the letters.  And,

18  um, I've been doing this a while and I just thought that

19  was a very fine sentencing memorandum.  But I wanted to

20  say this parenthetically, because I will proceed as I do

21  in every case to make an independent judgment.

22           But having said that, I'll hear from the

23  government, I'll hear from defense counsel, and I'll

24  hear from Mr. Ledvina, if he wishes to be heard from.

25           Mr. Rosen.

1          MR. ROSEN:  Yes, your Honor.  And I flagged an

2     issue to Ms. Gaudet just before.  I can do part of it in

3     open court, but there's certain aspects of that I'd like

4     to do at sidebar and I'll alert the Court to that when I

5     get to the section of my presentation.  If that's okay?

6          THE COURT:  That's fine.  You'll have in mind that

7     I've read everything, as is my practice, and so, um,

8     everything that has been filed I've read.  But I

9     understand why you would want to do that and you may.

10    Proceed.

11         MR. ROSEN:  Okay.

12         Your Honor, the government is recommending 5

13    months of imprisonment and a $50,000 fine, and the

14    government will recommend 1 year of supervised release

15    for a reason I will talk about at sidebar.

16         First I'd like to talk about the defendant's crime

17    that he stands convicted of which is participation in a

18    conspiracy to commit a securities fraud case.  The

19    offense conduct here is described at length in the PSR

20    and I will not rehash the conduct here.

21         It's important to note that essentially what

22    occurred here was a planned sophisticated theft from

23    unsophisticated investors.  The co-defendant, Maury

24    Tobin, who has pled guilty before Judge Gorton and

25    remains to be sentenced, but he, essentially together

1  with others, took control of companies that they were

2  going to turn into publicly-traded companies.  Tobin and

3  others had hid their share ownership of the

4  publicly-traded shares of these companies.  They did

5  this to make it appear that there was a free market for

6  the shares and that the companies were real legitimate

7  companies on the up-and-up.  They wanted to make it

8  appear that there was a free market of buying and

9  selling to induce others to purchase the shares in the

10  hopes that these investors believed they were buying

11  shares that would increase in value.  Investors wanted

12  to buy the next Microsoft or the next Google.  But this

13  was a mirage, there was no free market, there was no

14  arm's length transactions, the stock was controlled and

15  manipulated by a control group and this was fraud, pure

16  and simple, it was designed to induce people to purchase

17  their shares and part with their money when the shares

18  were effectively worthless.

19       The people who bought the $1.3 million in EPTI

20  shares, they've effectively given all their money to the

21  control group and the stock is worth, if you look it up

22  now, is effectively 0.  I think it trades -- it doesn't

23  really trade, but it's at .002 cents and the company

24  actually has a market cap of $13,487 at this point.  And

25  so this wasn't a story of a company that had promise but

1   unfortunately didn't work out, an investor-beware

2   situation, this was a company that by the time it went

3   public, the controlled float existed solely to be dumped

4   onto unsuspecting investors.

5          As we see from the PSR, and as Mr. Ledvina

6   admitted at the plea, he helped facilitate that fraud by

7   helping create and control a number of nominee entities

8   to disguise Maury Tobin's control of the float and which

9   allowed the stock to be transferred into the corrupt

10  asset-management firm of Silverton run by now convicted

11  felon Roger Knox, whose case is also pending before

12  Judge Gorton, and which allowed the shares to be sold to

13  the public.  So the crime was serious and obviously a

14  conviction here will serve an important deterring effect

15  to the public.

16         If it's possible now, Jenn, to go to sidebar, I

17  would appreciate that.

18         THE COURT:  That may be done.

19         MR. ROSEN:  Thank you, your Honor.

20         (Pause.)

21         THE COURT:  Jenn, you tell me when we're in this

22  breakout room.

23         THE CLERK:  Okay, Judge, I'm going to it right

24  now.

25         (Sealed portion begins.)

1          (In open court.)

2          THE CLERK:  Mr. Rosen, can you hear us?

3          (Pause.)

4          MR. ROSEN:  Yes, I can hear you.

5          THE CLERK:  Okay.

6          THE COURT:  Very well.  We're now back in open

7    court and we're turning to the final and most important

8    part of this proceeding, determining a fair and just

9    sentence for Mr. Ledvina.  I'll hear from the

10   government.  I'll hear from the defense.  I'll hear from

11   Mr. Ledvina if he wishes to be heard from.

12          Mr. Rosen, anything further to be said?

13          MR. ROSEN:  No, your Honor, I think I covered it.

14   The only issue that I did want to raise, and I probably

15   should have objected in the PSR to its inclusion, is the

16   issue of restitution.  We're still in the process of

17   figuring out the victims.  And so under -- and part of

18   it is the joint and several liability issue with the

19   other perpetrators.  And I would like to preserve on the

20   record, under 18 USC 3664(c)(5), which allows up to 90

21   days after for the government to inform the Court and

22   file a motion, um, that in the event we do choose to

23   seek restitution in this case and determine identifiable

24   victims, it's difficult at this time to --

25          THE COURT:  I appreciate that, and you understand

1    you'll have 90 days from today, if you're seeking

2    restitution, but you did not recite that before and now

3    I understand that you're preserving your option to seek

4    restitution from Mr. Ledvina.

5            MR. ROSEN:  That is correct, Judge.

6            THE COURT:  Very well.

7            Defense counsel, anything further to be said?

8            MR. ZEHNLE:  Your Honor, I will not repeat any of

9    the discussion obviously that we've had at the sidebar,

10   but I would like to make a few comments which I really

11   believe, in my experience, take this well beyond the

12   heartland of criminal cases that the Court or most

13   courts, um, regularly --

14           THE COURT:  Forgive the interruption, but one of

15   the things that concerns me, and I say it candidly, and

16   Ms. Victoria answered when I raised it before.

17   Mr. Ledvina is an attorney.  Of what bars is he a

18   member?

19           MR. ZEHNLE:  Your Honor, he was a member of the

20   New York state bar, which he voluntarily resigned prior

21   to even pleading guilty, because he was ashamed and

22   decided that it was not appropriate for him to maintain

23   his bar membership.  And I believe Mr. Ledvina is still

24   in the process of fully, um, fully relinquishing his

25   Tennessee state bar.  He attended law school at

1    Vanderbilt, he took the bar there, he never practiced

2    there.  I believe he was temporarily suspended simply

3    for dues, your Honor, because he wasn't practicing

4    there, um, as many attorneys do.  And so I think he was

5    already suspended at that point in time.  But that's --

6    but he's notified them of this case and his actions.

7            THE COURT:  Thank you.  So proceed.

8            MR. ZEHNLE:  So, Judge, before I forget, um, even

9    as part of your aside, thank you very much for your

10   comments on the memorandum that we submitted.  It's much

11   appreciated.

12           I think what I would really like to say in terms

13   of this particular defendant and why this is outside the

14   heartland of cases that this Court or any court usually

15   sees is that -- it reminds me of the old saying that

16   "Actions speak louder than words."  I can't imagine how

17   many times that this Court has had defense counsel come

18   up before it, um, and talk about the remorse the client

19   feels for his or her actions, and I'm sure one of the

20   most difficult things that your Honor has to do is

21   sometimes discern whether that's legitimate remorse or

22   someone simply just mouthing the words because they got

23   caught doing something and they want to try to limit how

24   much trouble they get into.

25           The reason I say "Actions speak louder than words"

 1    and the reason the whole idea came up is because it's
 2    more than just words.  You can see through manifest
 3    observable acts Mr. Ledvina's acceptance of
 4    responsibility and his true remorse in this particular
 5    case.  You talked about some of these things in open
 6    court with Mr. Rosen, the fact that it was less than two
 7    weeks in which he came over here from Switzerland.  Not
 8    only would it have been difficult for the United States
 9    to extradite Mr. Ledvina from Switzerland, I would say
10    it would have been near impossible, your Honor.  He's a
11    Swiss citizen and as I'm sure the Court is very
12    familiar, that most extradition treaties do not allow
13    for the extradition of their own nationals, and even if
14    they do, there ordinarily have to be a certain
15    equivalency of the laws of that particular jurisdiction
16    and the cause of the United States.  And it's my
17    understanding from Swiss attorneys that Swiss law
18    doesn't have a separate conspiracy charge for the civil
19    law jurisdiction, it's primarily statutory, as opposed
20    to our common law here.  And so I think it would have
21    been near impossible for him to have ever been
22    extradited.  And yet without delay he said, "I'm coming
23    over, I'm going to accept responsibility for this."
24           And, your Honor, I've been practicing 30 years,
25    almost 15 of which I was sitting in the position of

1   Mr. Rosen as a federal prosecutor and as a chief of the

2   criminal section, and I've been spending the majority

3   now of my time as a defense lawyer, and that is simply

4   highly extraordinary in my opinion.  And I think based

5   on facts, because I can tell this Court, as an officer

6   of the court, that there are numerous individuals that

7   are living and residing in Switzerland, Swiss citizens,

8   who were caught up in the tax investigation that flowed

9   from the UBS case, which the Court may recall.  And

10  these individuals have been sitting over there for a

11  decade and they're completely untouchable, and they know

12  it, and they're just happy and content with the fact

13  that they'll never have to come into an American

14  courtroom and answer for what they did.  But Matthew

15  Ledvina did not do that, he came in immediately and

16  cooperated and helped, um, and accepted responsibility.

17  He never even let it get to an extradition request.

18  There was never an extradition request that was

19  necessary, because he came.

20       And so he waived the indictment, proceeded by way

21  of information, and these are valuable rights, as this

22  Court knows and has previously advised Mr. Ledvina at

23  his change-of-plea hearing, and he did this while

24  acknowledging that he did wrong.  But I want to just

25  make sure that I again just focus on the fact that this

1   had nothing to do with Matthew Ledvina's role as an

2   attorney, that is in terms of using his legal skills

3   right now.  He served as a nominee or a nominee

4   shareholder where there were two individuals that he

5   secured at the request of his former partner and friend

6   to serve as nominees.  That is the crux, that is what,

7   um, this Court's been made aware of, and I think that's

8   important, um, to emphasize without belaboring it.

9        A couple things that aren't in the papers that we

10  filed, your Honor, that I think probably are worthy of

11  your consideration.

12       Mr. Ledvina is a foreign national, he is a Swiss

13  citizen, and in terms of considering the appropriate

14  sentence, um, I would argue to the Court, or at least

15  submit to you, that his role at, you know, any term of

16  incarceration this Court might impose, should at least

17  take into account the fact that even as a first-time

18  offender, a nonviolent offender, someone who otherwise

19  has had a spotless record for his entire life, he would

20  not be eligible, under my examination of the Bureau of

21  Prison policies, to go to a federal prison camp, even

22  the lowest level for people who are Criminal History

23  Category 1 and have no prior offenses, because he's a

24  foreign national.  It's my understanding, and I believe

25  this was confirmed recently about a year and a half ago

1    in one of the State Street cases, **United States vs.**

2    **Pennings**, that Judge Sorokin had, um, that he would be

3    sent to a private contractor minimum security prison

4    where foreign nationals are awaiting deportation.

5        And so it's not the same as -- you know if it was

6    a U.S. citizen who did, on the very same facts and

7    served as a nominee and pled guilty, um, he would be

8    subject to -- I think there's no really better way for

9    me to put it, I guess, than harder time than what you

10   might anticipate at a federal prison camp.

11       In addition, because he's a foreign national,

12   there is the, um, the requirement that he be turned over

13   to ICE custody -- immigration custody upon the

14   completion of any sentence of imprisonment.  That can

15   extend the time that he would have to wait in jail while

16   those proceedings, um, went forth, and that could be a

17   couple of months.  It might be sooner, because if he has

18   all his papers in hand, we could obviously try to do

19   that.  But having worked in the government and on the

20   defense side for many years, um -- and these are good

21   folks at BOP and people they contract with and I'm not

22   disparaging them in any way, but things do take time.

23   And when you now layer on top of that, as this Court is

24   eminently aware of, the implication of a pandemic that

25   we're dealing with, it even makes a stronger case, it

seems in my mind, that probation is the appropriate
sentence with whatever fine this Court deems to be just
and sufficient punishment.  But that is why we're so
strongly -- I've never been so strongly in favor of a
probationary sentence for a client based upon these
extraordinary facts.

And finally I would just like to say one thing,
your Honor.  If the Court were to consider a sentence of
incarceration, there is one aspect that I want to raise
as a possibility.

Mr. Ledvina does have a first cousin who lives in
the Boston area in Melrose, um, in fact his Exhibit C,
he wrote a letter on behalf and in support of
Mr. Ledvina.  We have been in discussions with him, he
has agreed that if this Court were to impose, um, home
confinement as a possible alternative, that that could
be served at his home.  Obviously we have his home
number and he can confirm that for the Court if
necessary.  If the Court were to lean or be thinking of
some period of incarceration, we would respectfully
request that the Court consider that as an alternative
as opposed to some privately-contracted prison, which
the closest one, by the way, which I didn't mention it
to the Court, is in, um, O'Shannon Valley, Pennsylvania,
and that's where most people who are sentenced in the

 1    Northeast are transported to.

 2         So I think those are my primary comments and

 3    additions that I wanted the Court to be aware of, and

 4    obviously I'm available to answer any questions that you

 5    may have.

 6         THE COURT:  Thank you.

 7         Now, Mr. Ledvina, you have the right to talk to me

 8    directly.  You are not required to.  But if you want to,

 9    I will hear you now.

10         THE DEFENDANT:  Judge, I'm not used to speaking so

11    much to, um, the Court, I've never had experience in

12    front of a court, I've never been to a federal court

13    apart from this case.  So I prepared statements for you.

14         I wanted to say how, um -- just a second.  I

15    wanted to say how truly sorry I was for what happened

16    and my conduct has impacted everyone in this case, my

17    family and my children, um, my -- you know my friends

18    and my former colleagues from my law firm, and, um, I

19    really feel terribly embarrassed about the situation

20    and, um, regret my choice that I've made here.

21         I should have known much better, I should have

22    asked more questions about what, um, what was entailed

23    here, and I should have probably had more strength of

24    character to have refused to become involved with, um,

25    to serve as a "nominee," as it's been called, and I'm

1    sad that I didn't ask the questions and that I now pay

2    very dearly for that decision.

3         So I've lost the law firm that I created in Zurich

4    here in 2010, in Switzerland.  You know I've lost my bar

5    licenses in the United States, you know, so I can't

6    really -- you know I don't have the ability to earn a

7    living as a lawyer anymore.  And so I've lost my

8    reputation here because of my involvement with this

9    matter.  And, um, I wish I could go back in time and

10   change it, and, um, of course that's probably what

11   everyone probably always says, but, um --

12        I -- I'm sorry to my, um -- I feel very

13   disappointed -- I know that everyone's very disappointed

14   with me and, um, I let down the law firm.  I've done my

15   most -- since this has happened, I've done my most to

16   make amends, I -- I've found employment for, um --

17   (Cries.)  I'm sorry, this is very emotional about these

18   things.  I feel like I've, um, you know let everyone

19   down, and I've done my most to seek redemption and to

20   make amends with everyone.  And I want to make it clear

21   that I've taken full responsibility for what I've done.

22   And I've done my absolute best to seek redemption in my

23   -- ever since this has come out.

24        And I'll have to find a way to earn a living in

25   the future and to support my family and I really have no

1    one to blame but myself and my sort of lack of diligence

2    in this whole agreement that I entered into.  So I can

3    only ask for, you know, your Court's mercy for the

4    involvement and, um -- and, um, I'll continue my efforts

5    to seek redemption in this case.

6          So thank you, your Honor.  Thank you.

7          THE COURT:  Thank you.

8          Mr. Matthew Ledvina, pursuant to 18 United States

9    Code, Section 3553(a), the information from the United

10   States Attorney, your attorney, the probation officer,

11   and yourself, this Court sentences you to 2 1/2 years

12   probation with all the general and special conditions of

13   probation and the Court adds one additional special

14   condition of probation.  It is this.  You will

15   forthwith, um, terminate your membership in the bar of

16   the State of Tennessee, so that you have no bar

17   memberships in the United States.

18         The Court imposes upon you a fine of $50,000.  The

19   Court imposes a $100 special assessment as is required

20   by the law.  The Court gives the government 90 days from

21   today's date to determine whether it will make a motion

22   for restitution jointly and severally with the other

23   offenders.

24         Mr. Ledvina, let me explain this sentence to you.

25   In one sense what I say now is supererogatory, I mean it

1     just adds little to the reflections that you have

2     explained to me, and which I want you to know I accept,

3     I believe.

4          In everyone's life there comes a time or times

5     when a misstep -- but a knowing misstep, this wasn't

6     some mistake, a knowing misstep is available, and you

7     admitted it through a failure of character, you made

8     this knowing misstep.  And then when it all came

9     crashing down, as your counsel has ably explained and as

10    Mr. Rosen, with some sensitivity, has in large measure

11    agreed, you have done everything to seek redemption.

12    Your steps are, um, extraordinary, and this Court takes

13    those things into account.  That's the basis for the

14    sentence I have imposed upon you.

15         You must understand, and I think you do

16    understand, that on average I have sentenced people to 3

17    years in prison for this conduct, that's been the

18    average sentence I have imposed.  Your case is a

19    different case and it is through your efforts to seek

20    redemption that warrants the sentence I have imposed.

21         Now this is a real sentence, it's a real crime.

22    Though you are a Swiss National, if you have

23    requirements under the terms of your probation, I expect

24    those requirements fully to be carried out.

25         You have the right to appeal from any findings or

1    rulings the Court has made against you.  Should you

2    appeal and should your appeal be successful, in whole or

3    in part and the case remanded, you'll be resentenced

4    before another judge.

5         Now to defense counsel, if an appeal is decided

6    upon and you want transcript, seek it from this session

7    of the court because I'll turn it around right away.  Do

8    you understand?

9         MR. ZEHNLE:  Yes, your Honor.

10        THE COURT:  Very well, that's the sentence of the

11   Court.  We'll stand in recess.

12        (Ends, 10:10 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3

4          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

5     hereby certify that the forgoing transcript of the

6     record is a true and accurate transcription of my

7     stenographic notes, before Judge William G. Young, on

8     Wednesday, June 3, 2020, to the best of my skill and

9     ability.

10

11

12

13    /s/ Richard H. Romanow 10-13-20
      _____
14    RICHARD H. ROMANOW   Date

15

16

17

18

19

20

21

22

23

24

25
```